**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CONNIE COOK,

      *Plaintiff,*

vs.

      Case No. 16-1077-EFM

NANCY BERRYHILL, Acting
Commissioner of Social Security,

      *Defendant.*[1]

**MEMORANDUM AND ORDER**

Plaintiff Connie Cook seeks review of a final decision by Defendant, the Commissioner of Social Security, denying her application for disability insurance benefits and supplemental social security income. Cook alleges error by the administrative law judge ("ALJ"). Specifically, she contends that neither the ALJ's residual functional capacity ("RFC") assessment nor his credibility analysis were supported by substantial evidence. Having reviewed the record, and as described below, the Court disagrees and affirms the order of the Commissioner.

## I.      Factual and Procedural Background

In March 2013, Connie Cook applied for disability insurance benefits and supplemental social security income. She claimed disability due to glaucoma, Meniere's disease, depression,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d).

high cholesterol, and hearing loss.  The alleged onset date of the disability was December 21, 2012, when Cook was 57 years old.   Her application was denied initially and upon reconsideration.  Cook then asked for a hearing before an ALJ.

ALJ James Harty held an administrative hearing on January 7, 2015.  Cook appeared and testified at that hearing, as did Melissa Brassfield—an impartial vocational expert.   Cook requested a supplemental hearing that was held on September 16, 2015.  Cook testified again at the supplemental hearing.   Dr. Ronald Devere—an impartial medical expert—and Cynthia Younger—an impartial vocational expert—also appeared and testified at the supplemental hearing.  Cook was represented by counsel at both hearings.

The ALJ issued a written decision on November 20, 2015.  The ALJ found that Cook had not engaged in substantial gainful activity since the alleged onset date.  The ALJ found that Cook suffered from the following severe impairments: Meniere's disease, bilateral hearing loss, and hypothyroidism.  In addition to those severe impairments, the ALJ also found that Cook suffered from glaucoma, diabetes mellitus, and left cerebellopontine angle meningioma, status post craniotomy.  But the ALJ determined that these impairments were non-severe.  The ALJ further determined that Cook's medically determinable mental impairment of major depressive disorder was also non-severe.  The ALJ went on to find that Cook did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that Cook had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could lift and carry 40 pounds occasionally and 25 pounds frequently.  Additionally, the ALJ found that Cook could sit, stand and/or walk for 6 hours in an 8-hour workday.  According to the ALJ, Cook could not climb

ladders, ropes, or scaffolds, but could tolerate occasional exposure to dangerous moving machinery and unprotected heights.

Given Cook's RFC, the ALJ found that she was capable of performing her past relevant work as a dental hygienist.  Thus, the ALJ concluded that Cook had not been under a disability from December 21, 2012, through the date of the decision.

Cook requested a review of the hearing with the Appeals Council, which was denied on January 27, 2016.  Accordingly, the ALJ's November 2015 decision became the final decision of the Commissioner.  Cook filed a Complaint in this Court.  She argues that the ALJ's RFC assessment was not based on substantial evidence.  Additionally, she contends that the ALJ's credibility analysis was not supported by substantial evidence.  She seeks reversal of the ALJ's decision and remand for a new administrative hearing.  She also seeks the award of her costs and reasonable attorney's fees.  Because Cook has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.      Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2]  The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

might accept to support the conclusion."[4]   The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if she "can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6]   This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[7]

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]   The steps are designed to be followed in order.  If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the ALJ To assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether

---

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

the severity of those severe impairments meets or equals a designated list of impairments.[10]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [her] impairments."[11]

Upon assessing the claimant's RFC, the ALJ moves on to steps four and five, which requires the ALJ to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[13]  The burden then shifts to the ALJ at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[14]

### III.    Analysis

### A.    The ALJ's RFC assessment is supported by substantial evidence.

Cook argues that the ALJ's RFC assessment is flawed.  She points to the fact that the RFC assessment does not include sufficient limitations for vertigo attacks despite the ALJ's finding that Meniere's disease was a severe impairment.  According to Cook, the medical records

---

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12]*Id.* at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

demonstrate that unpredictable vertigo attacks accompanied her Meniere's disease.  And so Cook argues that it was inconsistent for the ALJ to find that her Meniere's disease was a severe impairment while failing to include limitations for the accompanying vertigo attacks. Specifically, she notes the absence of unscheduled breaks as result of Cook's unpredictable, likely vertigo attacks.  Cook claims that "each medical opinion indicated that Cook would experience some limitation from vertigo attacks."  Therefore, Cook contends that the ALJ's RFC does not accurately reflect her limitations, and thus, remand is required.   In response, the Commissioner contends that the ALJ's RFC finding is supported by substantial evidence.  As the Commissioner puts it, "there were widely divergent views on the effects of [Cook's] vertigo on her function.  The ALJ discussed all of these medical opinions in the RFC finding, comparing them to each other, and weighing them accordingly."

The opinions and records of three doctors are relevant to Cook's asserted vertigo-related limitations: (1) Dr. Kryzer, who treated Cook's Meniere's disease; (2) Dr. Scheufler, who was Cook's primary care physician, and (3) Dr. Devere, a non-examining medical expert.  The Court will summarize their respective contributions to the record, and the weight assigned to them by the ALJ.

Because Dr. Kryzer treated Cook's Meniere's disease, he contributed the most evidence related to her Meniere's disease and the related vertigo spells.  In January 2013, Dr. Kryzer's notes indicated that Cook's Meniere's disease was stable and her vertigo spells were controlled. In March 2013, Kryzer wrote that Cook had a long history of Meniere's disease and that she "was treated with a chemical labyrinthectomy in 2010 that has fairly controlled the vertigo spells, but she still does have episodes of lightheadedness, dizziness, and imbalance."  A year later, on March 10, 2014, Dr. Kryzer once again noted that Cook's Meniere's disease was stable

and that her vertigo spells seemed controlled.  And yet, two days later, Dr. Kryzer completed a questionnaire regarding Cook's vertigo.  Dr. Kryzer stated that Cook had vertigo attacks about twice a week, lasting between 30 and 60 minutes per attack.[15]  In the questionnaire, Dr. Kryzer indicated that Cook's impairment would produce good and bad days, and that she would miss three or more days of work per month.  Still, Dr. Kryzer opined that Cook was capable of low stress work.

Because Dr. Scheufler was Cook's primary care physician, he cautioned that "Meniere's Disease is a clinical diagnosis and I would refer you again to Dr. Kryzer's notes."  Still, in August 2013, Dr. Scheufler wrote that Cook's "condition had worsened" with regard to her Meniere's disease and meningioma repair.  In November 2013, Dr. Scheufler again noted that Cook's Meniere's disease had been bothering her, and commented that she had "attacks 2-3 times a week, occasionally to the point of emesis (vomiting) and it can lay her up for as long as a couple of days."  Dr. Scheufler also commented that Cook struggled with balance and became dizzy.  Dr. Scheufler claimed that Cook's prognosis was completely unpredictable because she "could do fine for weeks and then have a severe attack just out of the blue."  Ultimately, Dr. Scheufler's opinion was that Cook was disabled and unable to work because of the nature of her attacks.

Dr. Devere, a non-examining medical expert, also weighed in on Cook's condition.  After reviewing Cook's medical records, he opined that Cook's Meniere's disease had caused "intermittent 30 minute attacks of vertigo" two or three times a week.  But Dr. Devere also noted

---

[15] Dr. Kryzer's March 10 and March 12 opinions give rise to two possible inferences.  One possibility is that they are inconsistent: on March 10, Dr. Kryzer opined that Cook's vertigo spells were controlled and on March 12, he claimed that she had bi-weekly vertigo attacks lasting up to an hour each.  The other possibility is that bi-weekly vertigo attacks, in Dr. Kryzer's opinion, were "controlled."  The ALJ drew the first inference, and the Court will not substitute its judgment for that of the ALJ.

that those attacks were more controlled by January 2013.  Dr. Devere ultimately concluded that Cook had the ability to perform a range of light work.

The ALJ assigned mixed weight to the various opinions of Dr. Kryzer.  He assigned the greatest weight to Dr. Kryzer's medical source statement dated March 19, 2013.   In that statement, Dr. Kryzer noted that a chemical labyrinthectomy had fairly controlled Cook's vertigo spells.  The ALJ noted that this opinion was well-supported by the record and included careful consideration of Cook's allegations.  On the other hand, the ALJ was far less convinced by the March 2014 questionnaire, in which Dr. Kryzer opined that Cook would be absent from work three times a month and suffer bi-weekly vertigo attacks.  The ALJ found that the March 2014 opinion was "inconsistent with Dr. Kryzer's own treatment records and the claimant's actual activities of daily living."  Accordingly, the ALJ assigned very little weight to the 2014 opinion.  Similarly, the ALJ assigned little weight to Dr. Scheufler's opinion because he did not treat Cook's Meniere's disease and his opinion was inconsistent with Dr. Kryzer's 2013 records.

The ALJ assigned partial weight to the opinion of Dr. Devere.  The ALJ noted that he "basically agreed" with Dr. Devere's assessment, but disagreed as to pulmonary limitations.  That disagreement is irrelevant to this appeal; as far as Cook's vertigo is concerned, the ALJ agreed with Dr. Devere.  This is unsurprising, as it appears that Dr. Devere basically adopted Dr. Kryzer's March 2013 findings in forming his own opinion.

The ALJ also considered Cook's subjective complaints.  Cook testified that she had frequent vertigo spells lasting for days.  But the ALJ noted that those allegations had not been noted since the onset date and several providers had noted that those conditions were stable or improved.  Additionally, the ALJ reported that Cook testified that she drives a little, and she "did not describe fairly limited activities of daily living due to her conditions."  Ultimately, the ALJ

determined that Cook's "statements concerning the intensity, persistence, and limiting effects" of her symptoms were "not entirely credible."

Taken together, the ALJ arrived at an RFC for Cook that did not include unscheduled breaks to accommodate bi-weekly, unpredictable vertigo attacks. Cook contends that this was error. She asserts

> [t]he issue here is that each medical opinion indicated the Cook would experience some limitation from vertigo attacks and despite the consistency of these opinions and the ALJ's agreement that Cook's Meniere's disease was a severe impairment, the ALJ never accounted for the limitation in the RFC assessment.

The Court disagrees.

The RFC assessment must be based on all relevant evidence in the case record.[16] If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the medical opinion was not adopted.[17] But there is no requirement that the RFC findings directly correspond to a specific medical opinion in the record.[18] And the RFC assessment need not discuss every single piece of evidence.[19] Although the record must demonstrate that the ALJ considered all of the evidence, he is only required to discuss the evidence supporting his decision, uncontroverted evidence he chooses not to rely on, and significantly probative evidence he rejects.[20]

---

[16] SSR 96-8p, 1996 WL 374184, at *5 (Soc. Sec. Admin. July 2, 1996).

[17] *Id.*

[18] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

[19] *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

[20] *Id.*

Cook claims that the ALJ acknowledged her vertigo attacks, and yet failed to include a corresponding limitation of unscheduled breaks.  But the ALJ only acknowledged that Cook's impairments "could reasonably be expected to cause the alleged symptoms."  He did not concede that the symptoms were all present; rather, the ALJ explicitly stated that Cook's statements concerning the limiting effects of her symptoms were not entirely credible.  The ALJ basically adopted Dr. Kryzer's March 2013 opinion that although intermittent vertigo attacks occurred in the past, Cook's vertigo attacks were now controlled.  Although there is evidence to the contrary, the ALJ explained why he accepted and rejected certain evidence in the record.  And "[t]he mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's assessment."[21]  Cook is really asking the Court to reweigh the evidence and substitute its judgment for the ALJ's, which it cannot do.[22]  Furthermore, even if Cook did need unscheduled breaks, such a limitation is not inconsistent with a finding that an individual is capable of working under 20 C.F.R. § 404.1545.[23]

In his RFC assessment, the ALJ considered all of the evidence and explained his acceptance and rejection of certain evidence.  The RFC assessment is supported by substantial evidence.

**B.      The Court will not disturb the ALJ's credibility determination.**

The ALJ noted that Cook's subjective complaints were not entirely credible.  Cook argues that the ALJ erred by not developing the record as to her activities of daily living,

---

[21] *Patterson v. Colvin*, 2015 WL 8375132, at *7 (D. Kan. 2015).

[22] *Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.2d at 800).

[23] *See Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016) (noting that even if a claimant had to miss work three times in a month, he would still be capable of working on a regular and continuing basis).

mischaracterizing her testimony, overlooking the episodic nature of her attacks, discounting Dr. Kryzer's opinion as it relates to her credibility, and ignoring evidence that would support Cook's credibility.

An ALJ's credibility determination must contain specific reasons supported by the evidence, and must be sufficiently specific to make clear the weight given to the statements and the reasons for that weight.[24]   Therefore, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[25] Still, "[c]redibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence."[26]   This burden is met "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility."[27]   The Tenth Circuit has explained the framework for considering subjective testimony.

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the Claimant's subjective

---

[24] *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 795 (10th Cir. 2013) (quoting SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996)).

[25] *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (brackets, citation, and internal quotation marks omitted).

[26] *Id.* (citation and internal quotation marks omitted).

[27] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

allegations of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, Claimant's pain is in fact disabling.[28]

Here, the ALJ found that Cook had satisfied the first two steps: he found that Cook's medically determinable impairments could reasonably be expected to cause the alleged symptoms. But upon consideration of all of the evidence, the ALJ found that Cook's statements were not entirely credible. "Once it is determined that the ALJ applied the correct legal standard to [his] credibility determination, the court's review of that determination is deferential."[29]

Several of Cook's arguments regarding credibility mirror those regarding the RFC assessment. For example, she claims that the ALJ improperly discounted her credibility where her statements were consistent with certain medical evidence. At the same time, she claims that the ALJ placed too much emphasis on other medical evidence—specifically evidence that her vertigo was controlled—that contradicted her statements about the frequency and severity of her attacks. But as stated above, the ALJ gave specific reasons why some medical evidence was given more weight than other evidence. Therefore, the ALJ did not err by considering Cook's subjective statements in concert with his own evaluation of the medical evidence.

Cook's other arguments about credibility are also unconvincing. First, she contends that it was error for the ALJ to find that her activities of daily living undermined her credibility because he did not ask her about those activities at the hearing. But the record shows that Cook took care of her pets, prepared meals, did household chores and yardwork, shopped for groceries, dined out, and was active in her church. Furthermore, although she did not regularly drive, she

---

[28] *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1992) (citations and internal quotation marks omitted).

[29] *Singleton v. Colvin*, 2014 WL 5149184, at *6 (D. Kan. 2014).

drove to get around when she needed to.  The ALJ noted these activities in his decision and referred back to them in assessing Cook's credibility.[30]

Second, Cook argues that the record supports a conclusion that she is credible.  Namely, the significant treatment she has received, her impressive work history, and the fact that her doctors provided letters or forms in support of her claim for disability.  Even accepting these assertions as true, the Court will not disturb the ALJ's findings as to credibility.[31]  The Court's review is deferential, and credibility determinations are generally binding.[32]  As long as the ALJ's credibility determination is supported by substantial evidence, the Court will accept the determination.[33]  Here, the ALJ cited specific activities of daily living and inconsistent medical evidence in discounting Cook's credibility.  Accordingly, the Court affirms his credibility determination.

## IV.    Conclusion

Both the ALJ's RFC assessment and his credibility findings were supported by substantial evidence.  Although there may have been evidence in the record that contradicted the ALJ's decision, the ALJ considered all of the evidence, explained his decision, and supported his

---

[30] *Wilson v. Astrue*, 602 F.3d at 1145 (citing *Thompson*, 987 F.2d at 1488) (noting that the nature of daily activities is relevant in determining whether subjective complaints are credible).

[31] *Bell v. Colvin*, 645 F. App'x 608, 613 (10th Cir. 2016) ("Assuming these factors are relevant, we decline to reweigh the evidence in this case or substitute our judgment for that of the ALJ.").

[32] *See Tegtmeyer v. Berryhill*, 2017 WL 411350, at * 3 (D. Kan. 2017).

[33] *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004) (affirming the ALJ's decision where "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record.").

findings with specific evidence.  The Court's review is limited to the issue of whether the ALJ's decision is free from legal error and supported by substantial evidence. [34]  Here, it is.

   **IT  IS  THEREFORE  ORDERED** that  the  decision  of  the  Commissioner  is **AFFIRMED**.

   **IT IS SO ORDERED**.

   Dated this 30th day of March, 2017.


   ERIC F. MELGREN
   UNITED STATES DISTRICT JUDGE

---

[34] *See Parker v. Colvin*, --- F. App'x ---, 2017 WL 344975, at *2 (10th Cir. 2017) (noting that review of the ALJ's decision is limited to the issue of whether the decision is free from legal error and supported by substantial evidence).